**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAIDEN BUKOWIEC, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>ANYTIME FITNESS FRANCHISOR LLC and A.M. CLEANING SOLUTIONS, INC. d/b/a ANYTIME FITNESS[1],<br><br>*Defendants*.<br>_______________________________________/ | **CLASS ACTION**<br><br>**Case No. 2:25-cv-15473**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiff, Jaiden Bukowiec ("Plaintiff"), brings this action against Defendants, ANYTIME FITNESS FRANCHISOR LLC and A.M. CLEANING SOLUTIONS, INC. d/b/a ANYTIME FITNESS ("Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.

**NATURE OF THE ACTION**

2. This is a class action under the 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA").

[1] Plaintiff hereby moves to dismiss former Defendant, ANYTIME FITNESS, LLC without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

3. This case arises from Defendants' transmission of multiple unauthorized text messages to cellular telephones in violation of multiple provisions of TCPA, without regard to consumers' consent or privacy rights, even after consumers opt out from Defendants' messages.

4. Defendant ANYTIME FITNESS FRANCHISOR LLC ("AF Franchisor") is a fitness center franchise company that provides gym and fitness services to consumers, based out of Minnesota.

5. Defendant A.M. CLEANING SOLUTIONS, INC. d/b/a ANYTIME FITNESS ("AF Franchisee") is a franchise of AF Franschisor, based out of New Jersey.

6. To promote their goods and services, Defendants engages in aggressive telephonic sales call campaigns to consumers with no regards for consumers' rights under the TCPA, even after customers opt out from Defendants' messages.

7. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in

controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

9. Venue is proper in the United States District Court for the District Of New Jersey pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District, AF Franchisee is located in this District, Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within the District Of New Jersey and, on information and belief, Defendants have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts in making such calls have occurred within this district, subjecting Defendants to jurisdiction in the District Of New Jersey.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Passaic County, New Jersey.

11. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 2130 (the "2130 Number") that received Defendants' text message solicitations.

12. AF Franchisor is a Minnesota company whose principal place of business is at 4969 111 Weir Dr, Woodbury, MN 55125-3200. AF Franchisor operates as a national fitness franchise system and directs, controls, and profits from the marketing and business activities of its franchisees throughout the United States, including New Jersey.

13. AF Franchisee is a New Jersey company whose principal place of business is at 430 Market St, Elmwood Park, NJ 07407 operating under the "Anytime Fitness" brand, name and franchise system. AF Franchisee directs, markets, and provides its business activities throughout the United States under the oversight and control of its parent company, AF Franchisor.

14. Defendants direct, market, and provide their business activities throughout the United States including the State of New Jersey.

15. As relevant to this Complaint, the franchisees from AF Franchisor hold themselves out as personal fitness centers who sell fitness products and services under the Anytime Fitness brand for Defendants' benefit and profit.

16. The AF Franchisee website prominently displays the Anytime Fitness logo and branding on the header and footer of the website, demonstrating the integrated nature of Defendants' operations. [2]

17. Defendant AF Franchisor controls and has the right to control all forms of advertising and marketing using its name and logo, as used by its franchisee, AF Franchisee. These forms of advertising include the unlawful telemarketing text messaging at issue in this case.

18. Defendant AF Franchisee operates under the authority and control of AF Franchisor and has the right to control all forms of advertising and solicitations as used by their employees.

19. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendants.

## FACTS

20. AF Franchisor provides required marketing training to their franchisees, including specific training on how to market their services via text messaging and calls.

[2] https://www.anytimefitness.com/locations/elmwood-park-new-jersey-4817 last visited November 21, 2025.

21. For example, AF Franchisor requires their franchisees to use one or more designated vendors and/or software programs to manage automated text messages, and one to one communications to members and prospective members.

22. AF Franchisor also requires their franchisees to conduct their own local marketing of their Anytime Fitness Centers and requires franchisees to spend a minimum of $600 to $1,000 on local advertising.

23. Further, AF Franchisor also requires their franchisees to pay them a monthly advertising fees and/or a percentage of the franchisees' gross revenue, thereby directly profiting from the marketing activities of franchisees, including AF Franchisee.

24. Under Defendants' business model and training protocols, many of AF Franchisor's franchisees engage in systematic calling and texting of consumers in an attempt to generate business and profits for the entire Anytime Fitness system.

25. These Anytime Fitness franchisees will routinely text consumers who are registered on the National Do Not Call Registry and who have not given Defendants nor any of their franchisees consent to contact them via text message on their residential telephone numbers, even after consumers opt out from such messages.

26. Beginning at least in May 2025, Defendants sent or caused to be sent multiple telemarketing text messages to Plaintiff's 2130 Number, from Defendants' telephone number (201) 379-0590.

27. On May 17, 2025 at 9:49 PM, Defendants sent a text message to Plaintiff's 2130 Number in direct violation of federal after-hours restrictions, which prohibit telemarketing communications before 8:00 AM and after 9:00 PM local time. Defendant continued its aggressive campaign with additional messages on May 19, 2025, sending two separate text messages to Plaintiff's 2130 Number on the same day (As shown below):



28. On May 20, 2025, Plaintiff responded with the clear and unambiguous opt-out message "STOP" to Defendants' (201) 379-0590 telephone number. Defendants immediately confirmed receipt of Plaintiff's opt-out request, responding: "You have successfully been unsubscribed. You will not receive any more messages from this number." (As shown above)

29. Despite Plaintiff's unequivocal opt-out request and Defendants' own confirmation, Defendants deliberately circumvented Plaintiff's opt-out by deploying a different telephone number (201) 580-2845 to continue its unwanted solicitations.

30. Specifically, on May 30, 2025 at 12:05 AM, Defendants sent another text message to Plaintiff's 2130 Number from its new telephone number (201) 580-2845, violating federal after-hours restrictions for the second time and disregarding Plaintiff's opt-out. Defendants' violations continued on June 3, 2025, when it sent yet another unwanted text message to Plaintiff's 2130 Number from the same secondary telephone number (201) 580-2845, demonstrating a systematic effort to evade consumer opt-out requests (As shown below):




31. This prolonged pattern of violations—spanning multiple telephone numbers and including two deliberate after-hours intrusions—demonstrates Defendants' complete failure to maintain any functional internal do-not-call procedures and its deliberate choice to ignore consumer opt-out requests over an

extended period, utilizing multiple telephone numbers in a systematic effort to evade opt-out requests.

32. The telemarketing messages Plaintiff received originated from telephone numbers (201) 379-0590 and (201) 580-2845, telephone numbers owned and/or operated by or on behalf of Defendants.

33. Defendant´s text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

34. Defendants' text messages constitute telemarketing because they encouraged the future purchase or investment in Defendants' property, goods, or services, i.e., fitness center services, gym memberships, and related fitness services.

35. The information contained in the text message advertises Defendants' various promotions, which Defendants sends to promote its business.

36. Defendants sent the subject texts within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district. Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

37. Defendants has the capability of immediately complying with Plaintiff's opt-out requests.

38. As demonstrated by the above facts, Defendants does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to

opt-out of Defendants' telephone solicitations by sending a clear "STOP" message, received confirmation of unsubscription, but Defendants continued to text message Plaintiff using a different telephone number, intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

39. Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendants has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendants.

40. Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendants does not have a written policy, available upon demand, for maintaining a do-not-call list.

41. Defendants failed to place Plaintiff on an internal do-not-call list after Plaintiff's "Stop" opt-out instructions.

42. Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendants does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

43. Defendant´s refusal to honor Plaintiff's opt-out requests demonstrates that Defendants does not maintain an internal do-not-call list.

44. Defendants did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made multple opt-out requests and those

requests were never processed; it was ignored by Defendants and its employees and Defendants continued to send text messages after May 20, 2025.

45. These facts strongly suggest that Defendants fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

46. Indeed, Plaintiff's and the class members' opt-out requests were not honored within a reasonable time from when the opt-out request was made.

47. Upon information and belief, Defendants does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

48. Upon information and belief, Defendants does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

49. Defendant´s texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

50. At no point in time did Plaintiff provide Defendants with his express written consent to be contacted after opting out.

51. Specifically Plaintiff never completed any type of form that clearly and conspicuously authorized Defendants to contact Plaintiff's residential cellular telephone with marketing text messages, particularly after opting out.

52. To the extent that Defendants ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on May 20, 2025, when Plaintiff sent the "STOP" message and received confirmation of unsubscription.

53. Plaintiff is the subscriber and sole user of the 2130 Number and is financially responsible for phone service to the 2130 Number.

54. Plaintiff's 2130 Number is his residential telephone number used for personal purposes. Plaintiff's 2130 Number is his primary way of being contacted in his home.

55. Plaintiff registered his 2130 Number with the national do-not-call registry on December 16, 2022 and has been registered at all times relevant to this action.

56. The TCPA´s implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered him or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57. Upon information and belief, Defendants has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendants also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

58. On information and belief, Defendants sought a financial benefit from the telemarketing text messages it placed to Plaintiff and the putative class members, as it attempted to derive business from these messages.

59. Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

60. Defendants' unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendants' unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

61. Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendants' unwanted text messages. In all, Defendants' violations of the TCPA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendants' solicitations. Additionally, the deliberate nature of Defendants' violations, continuing to send messages after express confirmation of removal, caused Plaintiff significant additional time loss and frustration over a period of several months.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

62. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

63. Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendants' products and services; and (5) for whom Defendants claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendants claims it supposedly obtained prior express written consent to call the Plaintiff.**
>
> **National Internal Do Not Call Class: From four years before the filing of the Complaint, all persons in the United States who (1) were sent more than one text message by or on behalf of Defendants within any 12-month period; (2) regarding Defendants' goods or services, to said person's cellular telephone number; and (3) while Defendants did not maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls**
>
> **After-Hours Violation Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendants or anyone on Defendants' behalf between the hours of 9:00 PM and 8:00 AM in the recipient's**

**local time zone, in violation of 47 C.F.R. § 64.1200(c)(1).**

64. Defendants and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each Class but believes the Class members number in the several thousands, if not more.

65. Also excluded from the Classes are persons who, after making a request to Defendants to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendants.

**NUMEROSITY**

66. Upon information and belief, Defendants has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

67. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' text message records.

**COMMON QUESTIONS OF LAW AND FACT**

68. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

a. Whether Defendants initiated telephone solicitations to Plaintiff and the Class members;

b. Whether Defendants violated 47 C.F.R. § 64.1200(c) by sending text messages to numbers on the Do Not Call Registry;

c. Whether Defendants violated 47 C.F.R. § 64.1200(d);

d. Whether Defendants violated 47 C.F.R. § 64.1200(c)(1) by sending text messages during prohibited after-hours times;

e. Whether Defendants adhered to requests by class members to stop sending text messages to their telephone numbers;

f. Whether Defendants keeps records of text recipients who revoked consent to receive texts;

g. Whether Defendants' conduct was knowing and willful;

h. Whether Defendants is liable for damages, and the amount of such damages; and

i. Whether Defendants should be enjoined from such conduct in the future.

69. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits telephone solicitations and telemarketing messages to consumers after they had requested to be opted out, during prohibits after hours times, and/or while they were registered on the DNC

Registry and at times prohibited by law, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

70. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

71. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

72. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

73. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

74. Plaintiff repeats and realleges the paragraphs 1 through 73 of this Complaint and incorporates them by reference herein.

75. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

76. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[3]

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

77. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

78. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

79. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. §

227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

81. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT II**
**VIOLATION OF 47 U.S.C. § 227(c)(2)**
**(Individually and on behalf of the National Internal Do Not Call Class)**

82. Plaintiff re-alleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

83. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

84. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 .F.R. § 64.1200(d)(3), (6).

85. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

C.F.R. § 64.1200(e).

86. Plaintiff and the Internal Do Not Call Class members made requests to Defendants not to receive telemarketing messages from Defendants.

87. Defendants failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

88. Upon information and belief, Defendants has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

89. Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200(d), as described above, Defendants violated 47 U.S.C. § 227(c)(5).

90. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

91. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

92. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

93. Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendants' illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**VIOLATION OF 47 U.S.C. § 227(c)(1)**
**(Individually and on behalf of Plaintiff and the After-Hours Violation Class)**

94. Plaintiff re-alleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

95. 47 C.F.R. § 64.1200(c)(1) provides that "[n]o person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)."

96. 47 C.F.R. § 64.1200(e) provides the rules set forth in 47 C.F.R. § 64.1200(c) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

97. Any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation

of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

98. Defendants violated 47 C.F.R. § 64.1200(c)(1) by initiating, or causing to be initiated, telephone solicitations to Plaintiff and the After-Hours Violation Class members during prohibited after-hours times.

99. Defendants violated 47 U.S.C. § 227(c) because Plaintiff and the After-Hours Violation Class members received more than one text message in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200(c)(1), as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the After-Hours Violation Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200(c)(1).

100. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the After-Hours Violation Class.

**COUNT IV**
**Knowing and/or Willful Violations of the TCPA**
**(On Behalf of Plaintiff and the Classes)**

101. Plaintiff re-allege and incorporates paragraphs 1-73 as if fully set forth herein.

102. At all times relevant, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

103. Defendants knew that it did not have prior express consent to transmit telemarketing text messages and knew or should have known that its conduct was a violation of the TCPA.

104. Defendants knew or should have known that Plaintiff˝s number was on the National Do Not Call Registry and that sending text messages to such numbers violated federal regulations.

105. Defendants knew or should have known that sending text messages during prohibited after-hours times (before 8:00 AM and after 9:00 PM) violated 47 C.F.R. § 64.1200(c)(1).

106. Defendants knew or should have known that continuing to send telemarketing text messages after receiving the request from Plaintiff not to receive telemarketing messages violated 47 C.F.R. § 64.1200(d) and related TCPA provisions requiring entities to maintain internal do-not-call procedures.

107. Because Defendants knew or should have known that Plaintiffs and Class Members had not given prior express consent to receive its telemarketing text messages and that their numbers were on the National Do Not Call Registry, that messages were being sent during prohibited after-hours times, and that opt-out requests were being ignored, the Court should treble the amount of statutory damages available to Plaintiffs

and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA and § 227(c)(5) of the TCPA.

108. As a result of Defendants' violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5)

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227.

c. An injunction prohibiting Defendants from sending text messages during prohibited after-hours times in violation of 47 C.F.R. § 64.1200(c)(1).

d. An injunction requiring Defendants to implement and maintain proper internal do-not-call procedures in compliance with 47 C.F.R. § 64.1200(d);

e. An injunction requiring Defendants to cease all text message solicitations to numbers on the Do Not Call Registry, and to otherwise protect the interests of the Classes;

f. An award of actual and statutory damages for Plaintiff and each member of the Classes;

g. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Classes, hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages as alleged herein.

Dated: November 21, 2025

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Kayla Kershen*
Kayla Kershen, Esq.
kkershen@shamisgentile.com
New Jersey Bar No. 512432025
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299