**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAIDEN BUKOWIEC, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANYTIME FITNESS FRANCHISOR LLC, et al.,<br><br>Defendants. | Civil Action No. 25-15473 (SDW) (MAH)<br><br><br>REPORT AND RECOMMENDATION |

I.      INTRODUCTION

This matter comes before the Court on the motion by Defendant Anytime Fitness, LLC ("Defendant" or "AF Franchisor") to dismiss Plaintiff Jaiden Bukowiec's ("Plaintiff") Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Def.'s Mot. to Dismiss, Jan. 30, 2026, D.E. 15. Plaintiff opposes the motion, and Defendant has filed a reply. Pl.'s Opp'n, Feb. 16, 2026, D.E. 17; Def.'s Reply, Feb. 23, 2026, D.E. 18. The District Court referred this matter to the Undersigned to issue a Report and Recommendation.[1] The Undersigned has considered this matter without oral argument. Fed. R. Civ. P. 78; Local Civ. R. 78.1. For the reasons set forth below, the Undersigned respectfully recommends that the District Court **GRANT** AF Franchisor's motion to dismiss for lack of personal jurisdiction.

---

[1] Magistrate judges may address dispositive motions by submitting a Report and Recommendation to the District Court. *Tucker v. Allied Pros. Ins. Co.*, No. 14-5977, 2015 WL 733665, at *2 (D.N.J. Feb. 20, 2015) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(c)(2)); *see also, e.g.*, *Thomas v. Vinculum Grp. Ltd.*, No. 15-3194, 2015 WL 13504683, at *1 (D.N.J. Dec. 21, 2015) (adopting Magistrate Judge Clark's Report and Recommendation on a motion to dismiss based on personal jurisdiction). Accordingly, the Undersigned addresses AF Franchisor's motion via Report and Recommendation.

## II.    BACKGROUND[2]

This putative class action seeks redress for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[3]  There are two defendants: (1) Anytime Fitness, LLC ("AF Franchisor"), which is a Minnesota-based fitness center company that franchises its name and brand to individual gyms across the nation; and (2) A.M. Cleaning Solutions, Inc. ("AF Franchisee"),[4] which is a franchisee of Anytime Fitness that operates a fitness center in New Jersey.  Am. Compl. ¶¶ 4-5.  Plaintiff alleges that AF Franchisee, at the direction and under the control of Defendant AF Franchisor, sent unwanted text messages to Plaintiff's cellular telephone even after he opted out, as part of an "aggressive telephonic sales call campaign[]." *Id.* ¶¶ 3, 6-7, 13.  According to the Amended Complaint, AF Franchisor trains its franchisees in marketing, and requires each franchisee to use designated vendors or software programs to market the individual gyms.  *Id.* ¶¶ 20-22.

Plaintiff is a New Jersey resident.  Beginning in May 2025, he began to receive telemarketing text messages from AF Franchisee.  *See id.* ¶ 26 (stating the messages were from "Anytime Fitness Elmwood Park," the location of AF Franchisee).  Plaintiff received the first message on May 17, 2025 at 9:49 p.m., even though federal law restricts telemarking communications to between 8:00 a.m. and 9:00 p.m.  *Id.* ¶ 27.  Plaintiff then opted out of receiving additional communications by replying "STOP."  However, he alleges that AF

---

[2]  The following facts are derived from Plaintiff's Amended Complaint.  Nov. 21, 2025, D.E. 9.

[3]  "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls."  *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013).  "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]."  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

[4]  On January 8, 2026, the Court extended AF Franchisee's deadline to file a responsive pleading until November 21, 2025.  *See* Order, D.E. 14.  However, AF Franchisee has not yet responded. *See* Dkt.

2

Franchisee continued to send telemarketing messages from another phone number.  *Id.* ¶¶ 28-31.

Plaintiff's phone number had been registered on the national Do-Not-Call Registry since

December 2022.  *Id.* ¶ 55.

The Amended Complaint asserts four counts against both defendants for violations of the

TCPA.  Count One is on behalf of Plaintiff and the Do-Not-Call Registry Class, *id.* ¶¶ 74-81,

Count Two is on behalf of Plaintiff and the National Internal Do-Not-Call Registry Class, *id.* ¶¶

82-93, Count Three is on behalf of Plaintiff and the After-Hours Violation Class, *id.* ¶¶ 94-100,

and Count Four is on behalf of Plaintiff and all classes for a knowing or willful TCPA violation,

*id.* ¶¶ 101-108.  Plaintiff seeks declaratory and injunctive relief, as well as actual and statutory

damages.  *Id.* at 27-28.

AF Franchisor has moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for

lack of personal jurisdiction.  D.E. 15.  AF Franchisor challenges whether this Court has either

general jurisdiction or specific jurisdiction over it.  As to general jurisdiction, AF Franchisor

argues that it is not "at home" in New Jersey, in that it maintains no permanent physical presence

in the State.  *Id.* at 6-8.  As to specific jurisdiction, AF Franchisor contends that it did not

purposefully direct any activities toward New Jersey that give rise to Plaintiff's claims or

otherwise are material to this action.  *See id.* at 8-11.

In opposition, Plaintiff does not contest that the Court lacks general jurisdiction.  *See*

*generally* Pl.'s Opp'n, D.E. 17.  But Plaintiff argues that the Court has specific personal

jurisdiction over AF Franchisor because AF Franchisor provided technology and training to its

franchisees, required the franchisees to use particular vendors and software to manage

telemarketing messages to potential consumers, and therefore maintained a level of control over

AF Franchisee's telemarketing communications.  *Id.* at 9, 11.  Plaintiff reasons that AF

Franchisor therefore purposefully availed itself of the benefits and privileges of doing business in New Jersey, and that it was reasonably foreseeable that AF Franchisor would be subject to suit in this State. *Id.* at 9-10.

In reply, AF Franchisor makes two arguments. First, AF Franchisor contends that Plaintiff failed to rebut the sworn Declaration of Jennifer Yiangou, which explains that AF Franchisee "makes its own choices on marketing (within brand guidelines)." Def.'s Reply, D.E. 18, at 1, 3. Second, AF Franchisor argues that even if the Amended Complaint controls, Plaintiff's allegations still do not establish specific jurisdiction, and instead "merely allege[] a typical franchisor-franchisee relationship lacking the strong defendant-forum-litigation nexus required to establish specific jurisdiction." *Id.* at 6, 9. For the reasons set forth herein, the Court agrees with AF Franchisor.

### III. DISCUSSION

#### a. Legal Standard

Where a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over the moving party. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). Where a court does not hold an evidentiary hearing on the motion to dismiss, as is the case here, the plaintiff need only establish a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Unlike a motion to dismiss for failure to state a claim, a plaintiff may not rely solely on pleadings for contests of personal jurisdiction, but "must 'sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" *Sciore v. Phung*, No. 19-13775, 2022 WL 950261, at *4 (D.N.J. Mar. 30, 2022) (quoting *Weber v. Jolly*

*Hotels*, 977 F. Supp. 327, 331 (D.N.J. 1997)); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).  However, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen v. Butler Specialties, Inc.*, No. 10-2833, 2011 WL 831933, at *2 (D.N.J. Mar. 3, 2011) (quoting 4 *Wright & Miller's Federal Practice & Procedure* § 1067.6 (3d ed. 2002)).

A district court generally exercises personal jurisdiction according to the law of the state in which it sits.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  The exercise of personal jurisdiction is normally a two-part inquiry.  That is, there must be a state statutory basis for exercising jurisdiction over a non-resident defendant as well as a constitutional basis whereby the minimum contacts between the non-resident and the forum state satisfy due process under the Fourteenth Amendment.  *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  However, New Jersey state law provides for jurisdiction to the fullest extent permitted by the United States Constitution.  Therefore, the court's inquiry into whether personal jurisdiction exists over a non-resident defendant concerns only questions of due process.  *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 145 (3d Cir. 1992); *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971).

Personal jurisdiction may be exercised under two distinct theories: general or specific jurisdiction.  *O'Connor*, 496 F.3d at 317.  Plaintiff does not argue that this Court has general jurisdiction over Defendant.[5]  The Court thus solely considers whether Defendant is subject to specific personal jurisdiction.

---

[5] General personal jurisdiction exists when the evidence shows that a defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  For general personal

Specific personal jurisdiction exists when the relationship among the forum, the defendant, and the cause of action is such that the defendant purposely availed itself of the forum's laws, the cause of action is related to or arises out of the defendant's contacts with the forum, and the defendant "should reasonably anticipate being haled into court there." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (internal citations and quotations omitted). In the Third Circuit, courts conduct a three-part inquiry to determine whether specific personal jurisdiction exists: (i) whether the defendant "purposely directed" activities at the forum state; (ii) whether the plaintiff's core claim arises out of or relates to "at least one of those activities[;]" and, if those two requirements are met, whether (iii) exercising jurisdiction over the non-resident defendant "comport[s] with fair play and substantial justice." *See O'Connor*, 496 F.3d at 317 (internal citations and quotations omitted). Although a specific personal jurisdiction analysis is usually claim-specific, this "is not required where the claims at issue factually overlap." *Chen v. Wang*, No. 22-4708, 2023 WL 3182264, at *6 (D.N.J. Apr. 30, 2023).

---

jurisdiction, courts consider, among other factors, whether a defendant's personnel or facilities are located in the forum state and whether a defendant advertised or solicited business there. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 262 (3d Cir. 2000). Courts may exercise general jurisdiction over foreign corporations if that corporation's affiliations with the forum are so "continuous and systematic" so as to render them "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "at home" where incorporated and here it maintains a principal place of business. *Id.* at 924.

In this case, the Court need not spend much time on general jurisdiction. AF Franchisor is a resident of Minnesota. As set forth in the Declaration of Jennifer Yiangou, AF Franchisor neither owns nor leases any property or facilities in New Jersey, and does not maintain an office there. Yiangou Decl., D.E. 15-2, ¶ 8. It also does not, itself, operate any fitness centers in New Jersey, as each of the sixteen Anytime Fitness centers in New Jersey are independently owned and operated. *Id.* ¶¶ 9-10. Thus, the Court finds that AF Franchisor's contacts with the forum are not "continuous and systematic" because Plaintiff has not shown—through any credible evidence—that AF Franchisor has personnel or facilities located in New Jersey or that Defendant is "at home" in New Jersey.

First, the plaintiff must prove that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *D'Jamoos ex rel Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). While physical entrance is not necessary, a defendant's contacts must be such that they amount to a "deliberate targeting of the forum." *Id.* (quoting *O'Connor*, 496 F.3d at 317). Accordingly, "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *O'Connor*, 496 F.3d at 317 (quoting *Hanson*, 357 U.S. at 253); *see also Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 353 (D.N.J. 1998) (stating that "[a] single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state").

The second prong of the three-part inquiry has been described as the relatedness prong. *Klick v. Asbestos Corp., Ltd.*, No. 20-16654, 2021 WL 2666709, at \*3 (D.N.J. June 28, 2021). Under this prong, the court must determine if plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state. *See O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). "The degree of relatedness required in a given case is inversely proportional to the overall 'intensity of [the defendant's] forum contacts.'" *O'Connor*, 496 F.3d at 320 (alteration in original) (quoting *Vons Cos. v. Seabest Foods, Inc.*, 926 P.2d 1085, 1096-86 (Cal. 1996)). "The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id.* at 322.

7

As to the third prong, the Court should examine several factors when considering fairness and justice including: (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the procedural and substantive interest of other nations. *O'Connor*, 496 F.3d at 324. Where, as here, "the defendant offers no argument on the third prong," "[c]ourts in this district routinely find jurisdiction proper when a plaintiff satisfies the first two prongs of the specific personal jurisdiction analysis." *W. Coast Life Ins. Co. v. Wells Fargo Bank, N.A.*, No 20-4350, 2021 WL 302919, at *7 (D.N.J. Jan. 29, 2021) (collecting cases). Accordingly, if Plaintiff satisfies the first two prongs, then the Court may assert personal jurisdiction over AF Franchisor.

### b. Analysis

As noted above, Plaintiff does not assert that this Court has general jurisdiction over AF Franchisor. Therefore, the Court turns to whether it has specific jurisdiction pursuant to Rule 12(b)(2).

Plaintiff seeks to hold AF Franchisor liable for TCPA violations allegedly committed by AF Franchisee. Plaintiff claims that AF Franchisee, a New Jersey company, "markets . . . its business activities . . .  under the oversight and control of its parent company, AF Franchisor." *Id*. ¶ 13. Plaintiff also alleges that the text messages at issue here were sent at AF Franchisor's direction, pursuant to the marketing scheme that AF Franchisor directs and controls, and from which it profits. *Id.* ¶ 12. In short, Plaintiff posits that AF Franchisor should be held liable under the TCPA for telemarketing texts that its franchisee initiated because AF Franchisor controlled the nationwide marketing efforts of its franchisees.

AF Franchisor relies on the declaration of Jennfier Yiangou, Senior Vice President of Franchise Administration for AF Franchisor. Yiangou Decl., D.E. 15. Ms. Yiangou refutes the assertion that AF Franchisor controls the marketing efforts of its franchisees, including AF Franchisee. *Id.* ¶ 9. Ms. Yiangou states that although AF Franchisor has guidelines for its franchisees concerning marketing, the franchisees control their own marketing and are solely responsible for its daily operations. *Id.* ¶ 10. AF Franchisor also does not allow any of the individual gyms to identify themselves as "Anytime Fitness"—"instead, franchisees must identify themselves as operating a specific franchised Anytime Fitness-branded club." *Id.* ¶ 11. Individuals who join the gyms enter contractual relationships with a specific franchise, not AF Franchisor. *Id.* ¶ 12. Perhaps most importantly, Ms. Yiangou states that the unwanted text messages at issue here were not placed on AF Franchisor's behalf or at its direction, much less by AF Franchisor itself. *Id.* ¶ 13. In fact, the AF Franchisor's brand guidelines and franchise agreement, require the franchisee "to comply with federal, state, and local laws[.]" *Id.* ¶¶ 15-16. Finally, Ms. Yiangou emphasizes that the texts to Plaintiff were placed by telephone numbers with New Jersey area codes, and "are not numbers owned or operated by AFF; instead, they are associated with a franchisee operating a franchised club in New Jersey." *Id.* ¶¶ 13-14. AF Franchisor neither contacted Plaintiff's phone number nor directed any third party to do so; nor did AF Franchisor review, much less authorize, any communications to Plaintiff's number. *Id.* ¶¶ 14, 17.

The Court concludes that AF Franchisor, through the Ms. Yiangou's Declaration, has provided sufficient evidence to shift the burden back to Plaintiff to provide evidence that this Court has jurisdiction. *See Metcalfe*, 566 F.3d at 330 (emphasizing that after a defendant raises a jurisdictional defense, a plaintiff must prove that jurisdiction is proper using affidavits or other

competent evidence).  However, Plaintiff does not contest the assertions in Ms. Yiangou's declaration.  Plaintiff also has not submitted competent evidence to establish personal jurisdiction as required to respond to Defendant's motion.  *See Time Share Vacation Club*, 735 F.2d at 66 n.9.  Rather, Plaintiff avers that, because "personal jurisdiction is a factual issue, 'the plaintiff receives the benefit of what amounts to a Rule 12(b)(6) standard' if no discovery has been done or an evidentiary hearing held."  D.E. 17, at 6.

There are two problems with Plaintiff's proposition.  First, Plaintiff's proposition purports to rely on *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir. 1992).  But that quoted language does not appear in *Carteret*; it appears in *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020).  The second, and bigger, flaw in Plaintiff's proposition is that *Murphy* is factually distinguishable from the instant case.  The *Murphy* plaintiff's allegations received the benefit of a Rule 12(b)(6) standard only because the plaintiff had also "offered evidence on the personal jurisdiction issue."[6]  *Id.*  For example, the plaintiff in *Murphy* proffered that at least part of the wrongful conduct occurred in, or originated from, the United States, including his communications with, and directives from, Eisai UK officers.  *Id.* at 219, 223.  The plaintiff's complaint and motion papers "cited, described, and relied on" communications outside the pleadings to demonstrate that defendant had continuous and systematic contacts with New Jersey.  *Id.* at 219 n.9.  Here, Plaintiff offered no additional evidence to rebut AF Franchisor's Declaration.

---

[6]  In fact, the court in *Murphy* reiterated the well-established principle that "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations."  *Id.* at 213 (quoting *Miller Yacht Sales*, 384 F.3d at 101).

Plaintiff also relies on *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). In *Danziger*, the Third Circuit instructed that "[b]ecause the District Court did not hold an evidentiary hearing on personal jurisdiction, we take [plaintiff]'s factual allegations as true." D.E. 17, at 11. *Danziger*, like *Murphy*, is distinguishable from the present case. In *Danziger*, there was no indication that the defendant submitted a sworn declaration or affidavit like Ms. Yiangou's Declaration here. In other words, the *Danziger* court could "take [the plaintiff]'s factual allegations as true" because the defendant never rebutted them. But a court cannot accept as "true all of the allegations in the complaint" when deciding a motion to dismiss under Rule 12(b)(2) when "those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). Accordingly, Plaintiff's allegations will not receive the benefit of a Rule 12(b)(6) standard except to the extent that Ms. Yiangou's Declaration does not rebut them.

Regarding the first prong of the specific personal jurisdiction test, the Court agrees with Plaintiff that AF Franchisor purposefully directed activities toward New Jersey. D.E. 17, at 8. AF Franchisor does not appear to argue otherwise. After all, there are sixteen Anytime Fitness gyms in New Jersey, including AF Franchisee's Elmwood Park location. Yiangou Decl. ¶ 10. AF Franchisor entered into franchise agreements with these New Jersey locations, who pay for the right to use the Anytime Fitness brand. *Id.* ¶ 6. As Plaintiff notes, Third Circuit precedent lends support to the proposition that AF Franchisor purposefully availed itself of New Jersey's market. D.E. 17, at 9-10 (quoting *Hasson v. FullStory, Inc.*, 114 F.4th 181, 193 (3d Cir. 2024) (holding that national pizza chain Papa Johns purposefully availed itself of Pennsylvania's market because it maintained about eighty-five Pennsylvania stores, regularly marketed and advertised its products in the state, and regularly sold pizza to Pennsylvania residents)).

11

But it is well-settled that a franchise agreement alone is insufficient to establish personal jurisdiction. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc*, 988 F.2d 476, 482 (3d Cir. 1993); *see also Mellon Bank (East) PSFS, Nat'l Ass'n v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1992) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant.").  Although a contract or franchise agreement may demonstrate prong one's purposeful-availment requirement, it does not necessarily follow that prong two's "arise out of or relate to" requirement is satisfied by a contract or franchise agreement alone.  Indeed, the Third Circuit held in *Hasson* that even though Papa Johns purposefully availed itself of Pennsylvania's market, the underlying claims ultimately did not arise out of or relate to those purposeful contacts into the state.  114 F.4th at 194.  The *Hasson* court explained that because prong two's "'relate to' requirement 'incorporates real limits,'" the plaintiff was required to provide "facts regarding Papa Johns' efforts to specifically direct or connect *Pennsylvanians* to the alleged harm." *Id.* (quoting *Ford Motor*, 592 U.S. at 362) (emphasis in original).

To satisfy prong two, Plaintiff must show "a *strong* 'relationship among the defendant, the forum, and the litigation.'" *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (emphasis added) (quoting *Helicopteros*, 466 U.S. at 414).  The litigation certainly arose in the forum—the unwanted text messages were sent from AF Franchisee's New Jersey gym to Plaintiff's New Jersey phone number.  At first glance, there does not appear to be a strong relationship between AF Franchisor and the claims here, because AF Franchisor's Declaration rebuts Plaintiff's mere allegations that AF Franchisor controlled AF Franchisee's marketing decisions. *See* Yiangou Decl. ¶ 10 (stating "each of the 16 Anytime Fitness® franchises in New Jersey is independently owned and operated, retains its own employees, makes it own choices on marketing (within

brand guidelines), and is solely responsible for the day-to-day supervision and control of its business").  Although AF Franchisor presumably profits from AF Franchisee under the operative franchise agreement, the unwanted texts here were sent to solicit customers specifically on behalf of the Elmwood Park location and "were not placed by [AF Franchisor], on [AF Franchisor]'s behalf, or at [AF Franchisor]'s direction."  *Id.* ¶¶ 12-13.

To be sure, Ms. Yiangou's Declaration could be more clear in terms of describing AF Franchisor's "brand guidelines."  But even taking Plaintiff's allegations as true, Plaintiff fails to establish that the claims "arise out of or relate to" AF Franchisor's contacts with New Jersey.  To begin, Plaintiff's allegations are occasionally contradictory.  For example:

* Plaintiff alleges that "AF Franchisor controls all forms of advertising using its name and logo[.]"  Am. Compl., D.E. 9 ¶ 17.

  But Plaintiff also maintains that "AF Franchisee . . . has the right to control all forms of advertising and solicitations as used by their employees."  *Id.* ¶ 18.

* Plaintiff alleges that "AF Franchisor provides required marketing training to their franchisees, including specific training on how to market their services via text messaging and calls."  *Id.* ¶ 20.  Plaintiff also alleges that the individual franchisees must "use one or more designated vendors and/or software programs to manage automated text messages" as required by AF Franchisor.  *Id.* ¶ 21.

  But Plaintiff also states that "franchisees . . . conduct their own local marketing . . . ."  *Id.* ¶ 22.   And his brief reiterates that "Plaintiff received unwanted telephone solicitations from *AF Franchisee* in violation of her rights under the TCPA."  D.E. 17, at 11 (emphasis added).

At most, Plaintiff alleges that AF Franchisor provided training and established nationwide brand guidelines regarding marketing for AF Franchisee and similar individual fitness centers to follow.  This training may guide "franchisee [to] engage in systematic calling and texting of consumers in an attempt to generate business and profits for the entire Anytime Fitness system."  Am. Compl., D.E. 9 ¶ 24.  But as to the claims here, that is where AF Franchisor's relationship with New Jersey ends.  AF Franchisee is alleged to conduct its own

local marketing, which included texting consumers who were on the Do Not Call Registry or after hours—not AF Franchisor.  *Id.* ¶¶ 22, 25.  AF Franchisee controls all advertising and solicitations done by its employees—not AF Franchisor.  Finally, the unwanted text messages at issue here are alleged to violate the TCPA, but AF Franchisor "did not and would not approve of any illegal telemarketing by [AF Franchisee]; indeed, all franchisees are required by their contracts with AFF to comply with federal, state, and local laws applicable to their businesses." Yiangou Decl. ¶ 16.  Plaintiff did not rebut these facts with any competent evidence, and therefore has not established a strong connection between AF Franchisor and the violative text messages.

Courts in other jurisdictions have granted motions to dismiss TCPA claims for lack of personal jurisdiction under identical procedural postures.  In *Turizo v. Jiffy Lube Int'l, Inc.*, No. 19-61140, 2019 WL 4737696, at *5 (S.D. Fla. Sept. 27, 2019) the court granted the franchisor-defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  The plaintiff provided no evidentiary response to the franchisor-defendant's evidence, which fully rebutted the plaintiff's allegations to establish personal jurisdiction.  The plaintiff in *Turizo* also did not request jurisdictional discovery.  2019 WL 4737696, at *5 (noting that "had Plaintiff believed jurisdictional discovery was necessary, he could have requested leave to conduct such limited discovery prior to filing a response to Jiffy Lube's motion.").

Similarly, in *Ivy v. Rumble Franchise LLC*, No. 24-1175, 2024 WL 6962044, at *4 (M.D. Fla. Dec. 4, 2024), the court granted the franchisor-defendant's motion to dismiss for lack of personal jurisdiction.  In *Ivy*, the plaintiff attempted to rebut the defendant's declaration with evidence, including the franchise agreement.  *Id.* at *3.  But that evidence was not enough to connect the franchisor with the forum based on the franchisee's acts.  *Id.* at *4.

Plaintiff bears the burden of proving personal jurisdiction through competent evidence. *Napoli v. First Choice Loan Servs., Inc.*, No. 19-7265, 2020 WL 39184, at *6 n.7 (D.N.J. Jan. 3, 2020). Plaintiff has not done so here, and has failed to rebut the factual evidence offered by AF Franchisor.[7]

## IV.    CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court **GRANT** AF Franchisor's motion to dismiss.

The parties have **fourteen (14)** days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2).

**IT IS ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion for Dismiss, D.E. 15, and activate this Report and Recommendation for the District Court's review.

> *s/ Michael A. Hammer*
> **Hon. Michael A. Hammer,**
> **United States Magistrate Judge**

**Dated**: March 27, 2026

---

[7] Plaintiff did not request jurisdictional discovery. "[T]he Third Circuit has not directly addressed whether a court may grant jurisdictional discovery where the parties have failed to request it." *Smith v. Resort Condos. Int'l, Inc.*, No. 07-437, 2009 WL 10690509, at *6 (D.N.J. July 9, 2009). The Undersigned, however, like the *Smith* court, notes persuasive First Circuit authority: "If a party needs jurisdictional discovery, that party has an obligation to request it in a timely manner." *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006)). Because Plaintiff has not requested jurisdictional discovery, "Plaintiff has not even offered a sense of what relevant jurisdictional facts discovery might uncover." *Abira Med. Labs., LLC v. IntegraNet Physician Res., Inc.*, No. 23-03849, 2024 WL 1905747, at *6 n.9 (D.N.J. Apr. 30, 2024). Accordingly, the Court will not *sua sponte* grant jurisdictional discovery at this time, "because Plaintiff[ has] failed to adequately protect [his] own interests by requesting it." *Smith*, 2009 WL 10690509, at *6. In any event, jurisdictional discovery should be granted only where "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank*, 960 F.2d at 1223). Plaintiff only vaguely alleged a connection between AF Franchisor and the unwanted text messages at issue here, which falls well short of the "reasonable particularity" required for jurisdictional discovery.